**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Latoya Spencer, | No. CV-25-02219-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Copper Springs Hospital, et al., | |
| Defendants. | |

Pending before this Court is Plaintiff's Motion for Partial Summary Judgment (doc. 48), and Defendants' Motion for Summary Judgment (doc. 49). For the foregoing reasons, the Court will grant Defendants' motion and deny Plaintiff's motion.

## I.   SUMMARY OF CONCLUSIONS.

Plaintiff, an intake specialist, brought this civil action under Title VII and Arizona tort law against her employer and a doctor alleging she suffered illegal discrimination, retaliation, a hostile work environment, and defamation. There are no genuine issues of facts surrounding Plaintiff's administrative charge, her alleged adverse employment actions, the alleged offensive conduct she suffered, or Defendants' qualified privilege to speak. Plaintiff failed to exhaust her administrative remedies, does not establish a *prima facie* case for her Title VII claims, and Defendants sufficiently establish their qualified privilege to speak. Therefore, summary judgment in favor of Defendants is appropriate.

## II.   BACKGROUND.

Plaintiff, Latoya Spencer, brings claims under Title VII of the Civil Rights Act of

1964 and a claim for defamation. (Doc. 13.) Defendant Copper Springs Hospital ("Copper Springs"), hired Plaintiff, an African American woman, as an intake specialist on November 7, 2022. (Doc. 49 at ¶ 1.) Plaintiff's job duties included assessing patients for inpatient or outpatient care, completing clinical assessment forms, making initial patient determinations, and providing information to doctors to make admission decisions. (*Id.* at ¶ 3.)

On March 16, 2025, Plaintiff contacted Defendant Dr. Mecham, regarding a patient who presented with OCD ("the OCD-presenting patient"). (*Id.* at ¶ 4.) Plaintiff alleges Dr. Mecham accused Plaintiff of downplaying her assessment, said that he did not believe her, called her a liar, and said she needed to be fired ("the March 16 incident"). (*Id.*) Dr. Mecham sent a message to Plaintiff's supervisor reporting his version of events, who forwarded it to a Human Resources ("HR") member at Copper Springs. (*Id.* at ¶ 5.) Plaintiff complained to her supervisor and HR about Dr. Mecham verbally and in writing, stating that he was demeaning, unprofessional, and dismissive, that he called her a liar, dishonest and incompetent, and that he said she needed to be fired. (*Id.* at ¶ 7.) On March 28, 2025, Plaintiff met with HR, answered questions about the March 16 incident, and shared her version of events. (*Id.* at ¶ 9.)

On April 13, 2025, Dr. Mecham sent an email to Plaintiff's supervisor raising concerns about the job performance of the Intake Department. (*Id.* at ¶ 10.) On April 21, 2025, Plaintiff was placed on a Performance Improvement Plan ("PIP"), which stated that Plaintiff provided incomplete, inconsistent information to providers during care assessments. (*Id.* at ¶ 11.) Two Copper Springs HR members told Plaintiff the PIP did not mean she did anything wrong and that the PIP was for educational purposes. (*Id.* at ¶ 12.) The PIP required Plaintiff to continue her normal job duties with additional oversight for four weeks. (*Id.* at ¶ 13.) Plaintiff's pay, schedule, job title, and responsibilities were not affected by the PIP. (*Id.*) Two other female African American intake specialists received similar PIPs at this time, but other African American and/or female intake specialists did not receive PIPs. (*Id.* at ¶ 14.) Plaintiff alleges the additional oversight from the PIP

subjected her to substantial workplace pressure and that her mental well-being was affected by such pressures. (Doc. 51 at 3.) Plaintiff completed the PIP and it is no longer in effect. (Doc. 49 at ¶ 16.) After completing the PIP, Plaintiff received a raise and was hired for a separate job by Sage Counseling. (*Id.* at ¶ 19.) No one at Sage Counseling was aware of her PIP. (*Id.*)

On April 22, 2025, Plaintiff filed a complaint via Copper Spring's ethics hotline stating that Dr. Mecham called her a liar and incompetent, that he was verbally abusive, and that she believed she was retaliated against for complaining about him. (*Id.* at ¶15.) Plaintiff has worked with Dr. Mecham once since March 16, 2025, and Plaintiff **admits** he did not call her a liar, downplay her assessments, act rudely or unprofessional towards her, or "harass" her during this interaction. (*Id.* at ¶ 17.) On May 6, 2025, Plaintiff emailed her supervisor to express her belief that she was placed on a PIP in retaliation for reporting Dr. Mecham's conduct in creating a "hostile work environment." (*Id.* at ¶ 20.)

On May 8, 2025, Plaintiff received an email from her supervisor stating that she was out of compliance for clinical oversight and that she would need to catch up before her next shift. (*Id.* at ¶ 21.) Plaintiff **admits** she missed a clinical oversight, that she was taken off the schedule for one day to complete it, and that she received no corrective action. (*Id.* at ¶ 22.)

Plaintiff filed her original Complaint alleging discrimination, retaliation, and hostile work environment in violation of Title VII in Maricopa County Superior Court on May 22, 2025, then filed an Amended Complaint on June 4, 2025. (*Id.* at ¶ 24.) On June 5, 2025, Plaintiff emailed her supervisor to follow up on her earlier HR complaint and alleged, for the first time, that she believed she was subjected to discrimination. (*Id.* at ¶ 25.)

On June 25, 2025, Defendants removed Plaintiff's Amended Complaint to this Court. (*Id.* at ¶ 26.) Plaintiff filed the present SAC in this Court on September 3, 2025, and filed her charge with the EEOC on September 25, 2025. (*Id.* at ¶ 27.) Plaintiff received her right-to-sue letter from the EEOC on February 19, 2026. (Doc. 51-2 at 83.)

//

### III.   LEGAL STANDARD.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of showing that no genuine issue of material fact exists." *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (citations omitted).

### IV.   DISCUSSION.

#### A. Plaintiff Failed to Exhaust Her Administrative Remedies Under Title VII.

Defendants argue that Plaintiff's Title VII claims should be dismissed because she failed to exhaust her administrative remedies. (Doc. 49 at 7.) Specifically, Defendants point to Plaintiff's failure to file an EEOC charge until after she filed her original complaint and both amended complaints as the reason why the claims should be dismissed. (*Id.*) In response, Plaintiff contends that she exhausted her administrative remedies because she received a right-to-sue letter from the EEOC in February 2026 while this litigation was

pending. (Doc. 51 at 14–15). The Court concludes that Plaintiff failed to exhaust her administrative remedies regarding her Title VII claims.[1]

To bring a Title VII claim, "a plaintiff is required to exhaust his or her administrative remedies *before* seeking adjudication[.]" *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) (emphasis added). To exhaust Title VII administrative remedies, a plaintiff must "file a timely charge with the EEOC[.]" *Id.* at 1104. This charge "must be filed with the EEOC within 300 days after the alleged unlawful practice occurred."[2] *Bond v. Wells Fargo Bank NA*, 782 F. Supp. 3d 743, 753 (D. Ariz. 2025) (citation omitted). Courts "must enforce [this] rule if a party properly raises it." *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 549 (2019) (citation omitted). "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (simplified), *abrogated on other grounds by Fort Bend*, 587 U.S. 541 (2019).

Here, Plaintiff failed to exhaust her administrative remedies because she did not file her charge with the EEOC until **after** she filed this lawsuit. Specifically, Plaintiff filed her original complaint on May 22, 2025, her FAC on June 4, 2025, and her SAC on September 3, 2025. (Doc. 1 at 1); (doc. 13.) However, Plaintiff did not file a charge with the EEOC until September 25, 2025. (Doc. 49 at 5.) Thus, while Plaintiff filed her charge with the EEOC within 300 days of the alleged unlawful practices here, she did not exhaust "her administrative remedies *before* seeking adjudication of a Title VII claim." *Lyons*, 307 F.3d at 1103 (emphasis added).

Plaintiff asserts that she exhausted her administrative remedies because she received

---

[1] Because the Court finds that Plaintiff failed to exhaust her Title VII administrative remedies overall, the Court does not address Defendants' arguments that Plaintiff failed to exhaust her administrative remedies regarding her discrimination and retaliation claims based on color, sex, and retaliation due to boxes on the EEOC charge being unchecked. (Doc. 49 at 7.)

[2] "[B]ecause Arizona has its own state agency empowered to investigate and remedy allegations of discrimination in employment, Arizona is a so-called deferral state.*" Cox v. Glob. Tool Supply LLC*, 629 F.Supp.3d 963, 971 n.2 (D. Ariz. 2022) (citation omitted). In such states, the deadline to file a claim with the EEOC is extended from 180 days to 300 days if the plaintiff initiates proceedings with the state agency first. *Id.* "[W]here, like here, the ACRD and EEOC are parties to a worksharing agreement, a complainant ordinarily need not file separately with federal and state agencies." *Id.* (citation omitted).

a right-to-sue letter while this action was pending. (Doc. 51 at 14–15). Plaintiff relies on *Edwards v. Occidental Chem. Corp.* to support her claim, which states that "[a] Title VII complainant may file an action prior to receiving her right to sue letter, provided there is not evidence showing that the premature filing precluded the state from performing its administrative duties or that the defendant was prejudiced by such filing." 892 F.2d 1442, 1445 n.1 (9th Cir. 1990). However, the procedural posture in *Edwards* was different from this case. In *Edwards*, the plaintiff filed her Title VII charge with a designated EEOC agency **before** filing a complaint in federal court. *Id.* at 1444. Thus, the plaintiff in *Edwards* gave notice to "the charged party of the claim" and helped narrow the issues "for prompt adjudication and decision." *B.K.B.*, 276 F.3d at 1099.

Notably, other federal district courts hold that a plaintiff has not exhausted their administrative remedies where they filed a charge with the EEOC **after** filing a lawsuit, even where they later received a right-to-sue letter. In *Kirby v. Brown*, a Title VII plaintiff did not file a charge with the EEOC until five days after she filed her Title VII action in federal court. No. 2:13-CV-00021 LKK, 2013 WL 4780767, at *8 (E.D. Cal. Sept. 5, 2013). The court found that the plaintiff failed to exhaust her administrative remedies and that her Title VII claims should be dismissed. *Id.* The court reasoned that because a charge was not filed prior to the start of the lawsuit, "the purposes of the administrative charge requirement were not met" and the defendants "were not afforded an opportunity to either resolve plaintiff's concerns before she filed a complaint, or to be put on notice on plaintiff's claims so that they could potentially narrow the issues." *Id.*; *see United States ex rel. Reed v. Keypoint Gov't Sols.*, No. 14-CV-00004-CMA, 2017 WL 6033682, at *11 (D. Colo. Sept. 28, 2017), *aff'd in part, vacated in part, remanded*, 923 F.3d 729 (10th Cir. 2019) (finding that "it would defy logic to allow [the plaintiff] to satisfy the [statutory] exhaustion scheme by filing the [EEOC] charge after commencing suit").[3]

Like the EEOC charges in both *Kirby* and *Keypoint*, Plaintiff's EEOC charge was

---

[3] Allowing a plaintiff to bring a complaint before filing a charge "would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge …." *B.K.B.*, 276 F.3d at 1099 (citation omitted).

filed after her lawsuit began. Therefore, while Plaintiff filed her charge within the 300-day deadline and received a right-to-sue letter, she still failed to exhaust her administrative remedies before filing the current suit.[4] The Court grants Defendants' motion regarding Plaintiff's Title VII claims.

**B. Plaintiff Does Not Satisfy a *Prima Facie* Case under Title VII.**

Even assuming, *arguendo*, that Plaintiff properly exhausted her administrative remedies, the Court finds Defendants are entitled to summary judgment on Plaintiff's Title VII claims because Plaintiff does not sufficiently show essential elements of such claims.[5] Specifically, Plaintiff fails to show that she suffered an adverse employment action, that similarly situated employees were treated more favorably, or that she suffered offensive conduct sufficiently severe or pervasive to alter the conditions of her employment.

*1. Plaintiff Does Not Satisfy a Prima Facie Case for Discrimination.*

An employee suffers intentional discrimination when they are "singled out and treated less favorably than others similarly situated" because of their protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citations omitted). "Where direct evidence is unavailable, plaintiffs can, and frequently do, rely on the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*,[6] … as a way of channeling inquiry into the available circumstantial evidence." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).

Under *McDonnell Douglas*, a plaintiff alleging discrimination must first establish a *prima facie* case of discrimination. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). To establish a *prima facie* case of discrimination, Plaintiff must show

---

[4]     Plaintiff asserts that any procedural defect was cured by the Court because "the Court granted [her] request" to stay proceedings to allow completion of the EEOC process. (Doc. 51 at 15). Plaintiff's assertion misstates the record. The Court explicitly found that a stay was not warranted. (Doc. 29 at 1.) The Court instead required Plaintiff to provide notice of whether she received a right-to-sue notice by the end of a 180-day deadline. (*Id.* at 6–7). Because Defendants have sufficiently shown that Plaintiff did not exhaust her administrative remedies, her Title VII claims are dismissed.

[5]     Defendants are entitled to summary judgment on the Title VII claims against Dr. Mecham because the Ninth Circuit has "long held that Title VII does not provide a separate cause of action against supervisors or co-workers." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007).

[6]     411 U.S. 792 (1973).

that: (1) she belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably, or "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017). The proof necessary to establish a *prima facie* case for a Title VII claim at summary judgment is "minimal" and does not have to "rise to the level of a preponderance of the evidence." *Villiarimo*, 281 F.3d at 1062 (citation omitted). However, "conclusory statements without factual support are insufficient[.]" *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

The first two elements are uncontested. However, Defendants argue that Plaintiff did not suffer an adverse employment action. (Doc. 49 at 8–9.)

An adverse employment action is "one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (simplified). "[O]nly non-trivial employment actions[,]" such as "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion[,]" are considered adverse employment actions. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

Plaintiff claims that she suffered three adverse employment actions: (1) she was placed on a PIP, (2) she received an email stating that she was out of compliance with clinical oversight requirements, and (3) she was taken off schedule for one day to complete the clinical oversight she missed. (Doc. 49 at 5.) None of these qualify as an adverse employment action.

First, "merely placing someone on a [PIP] is not a per se adverse employment action." *E.E.O.C. v. Evergreen All. Golf Ltd., LP*, No. CV 11-0662-PHX-JAT, 2013 WL 4478870, at *10 (D. Ariz. Aug. 21, 2013). A PIP that is "non-disciplinary training" and does not "materially impact a plaintiff's compensation, terms, conditions, or privileges of

employment" is not considered an adverse employment action. *Id.*; *see Jackson v. City of Yachats*, No. 6:23-CV-00690-AP, 2025 WL 3524372, at \*16 (D. Or. Dec. 9, 2025) (holding that a PIP is not an adverse employment action where it does not materially alter the terms of a plaintiff's employment). Plaintiff **admits** that the PIP did not change her job responsibilities, did not change her pay, did not change her schedule, and did not change her title. (Doc. 49-1 at 30–31.) The PIP's only change was an increase in the supervision of Plaintiff's work for four weeks. (Doc. 49-1 at 29). In fact, Plaintiff received a raise after she completed the PIP, and she secured a second job with an employer who had no knowledge of her PIP. (Doc. 49 at 4.) The Court finds the PIP here was non-disciplinary training that did not impact Plaintiff's terms of employment. Thus, the PIP was not an adverse employment action.

Second, Plaintiff does not show how the email from her supervisor stating that she was out of compliance with clinical oversight requirements materially affected the terms of her employment. Plaintiff claims "she was fully compliant at all relevant times," (doc. 51 at 6), even though Plaintiff **admits** she missed a clinical oversight. (Doc. 49 at 4.) The email itself appears to be a mere follow-up email and nothing in its contents suggests that the material terms of Plaintiff's employment would be negatively impacted. *See* (doc. 49-11). Overall, Plaintiff fails to show that this email was an adverse employment action. *See Watkins v. Wesley Homes*, No. 2:25-CV-00290-LK, 2026 WL 353262, at \*4 (W.D. Wash. Feb. 9, 2026) (finding that a supervisor's email was not an adverse employment action where it only asked to discuss an issue with a plaintiff and stated that the plaintiff needed additional training).

Third, "a change in schedule will [typically] not constitute an adverse employment action." *Peck v. City of Tucson*, No. CV-20-00017-TUC-LCK, 2021 WL 24578, at \*6 (D. Ariz. Jan. 4, 2021), *aff'd*, No. 21-15198, 2021 WL 5984971 (9th Cir. Dec. 16, 2021). However, "a schedule change could be adverse to a particular employee facing specific circumstances." *Id.* Plaintiff does not point to any specific circumstances for why being taken off schedule for one day to complete a clinical oversight was materially adverse to

her employment. Plaintiff claims that "she was removed from the schedule based off a manufactured and mathematically impossible audit" but does not explain what this audit is or how it relates to her missing a clinical oversight. (Doc. 51 at 6.) Overall, Plaintiff does not point to anything in the record showing that being taken off-schedule for a single day to complete a clinical oversight materially affected the terms of her employment.

Additionally, Plaintiff fails to show that similarly situated employees outside her protected class were treated more favorably than her. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Employees are not required to be "identical; they must simply be similar in all *material* respects." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (cleaned up). Plaintiff claims she satisfies the fourth *prima facie* element of a Title VII discrimination claim because Dr. Mecham accepted a white male supervisor's clinical assessment of the OCD-presenting patient over hers, and because two other African American female intake specialists received similar PIPs at the same time she did. (Doc. 51 at 16–17.) However, Plaintiff's cited evidence does not show that Dr. Mecham agreed with a second screening assessment over Plaintiff's and nothing in the record shows that Dr. Mecham had access to objective data confirming Plaintiff's initial assessment of the OCD-presenting patient. While only African American female intake specialists received PIPs similar to Plaintiff's, other African American and/or female intake specialists did not receive such PIPs. (Doc. 49 at 6.) Plaintiff may subjectively believe that Defendants acted with a discriminatory motive, but such a belief without sufficient evidence "is no more than speculation." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). Thus, Plaintiff fails to show that similarly situated employees outside her protected class were treated more favorably than her.

Overall, Plaintiff does not present sufficient evidence to satisfy a *prima facie* discrimination case under Title VII. Because Plaintiff has not demonstrated a genuine issue of fact, Defendants are entitled to summary judgment on the discrimination claims.

//

### 2. *Plaintiff Does Not Satisfy a Prima Facie Case for Retaliation.*

Similar to the requirements of a Title VII discrimination claim, Plaintiff must establish a *prima facie* case for retaliation. *Cornwell*, 439 F.3d at 1034. This requires Plaintiff to show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action." *Id.* at 1034–35. As discussed above, the three actions Plaintiff claimed she suffered in her discrimination claim were not adverse employment actions and therefore fail to satisfy a *prima facie* case for retaliation. The only new action Plaintiff claims as adverse is that she had to "continue working with Dr. Mecham without Copper Springs protecting her from him." (Doc. 49 at 6.)

The Court finds Plaintiff's ongoing work with Dr. Mecham was also not an adverse employment action. Plaintiff claims continuing to work with Dr. Mecham "caused heightened stress, emotional distress, and additional workplace pressure." (Doc. 51 at 4.) However, Plaintiff does not explain how continuing to work with Dr. Mecham created a material impact on the terms of her employment. Plaintiff's only evidence in the record to support her conclusion is an email from Plaintiff stating that she left her shift because of "acute physical and emotional distress caused by Dr. Mecham's verbal abuse and misconduct." (Doc. 51-2 at 21.) But, Plaintiff ***admits*** that the only time she worked with Dr. Mecham after the March 16 incident was during a routine staffing call. (Doc. 49-1 at 23–24). Plaintiff ***admits*** that during this interaction, Dr. Mecham did not call her a liar, did not downplay her assessment, and was not rude to her in any way. (Doc. 49-1 at 26). This is insufficient to establish an adverse employment action. *See Rodriguez v. Boeing Co.*, No. 21-35951, 2024 WL 1328774, at *1 (9th Cir. Mar. 28, 2024) (finding that a plaintiff did not show an adverse employment action where defendants refused to move plaintiff's workspace away from a coworker who previously made disparaging remarks).

Thus, Plaintiff does not present sufficient evidence to satisfy a *prima facie* claim for Title VII retaliation. Because Plaintiff has not demonstrated a genuine issue of fact, Defendants are entitled to summary judgment on the retaliation claim.

### 3. *Plaintiff Does Not Sufficiently Show a Hostile Work Environment Claim.*

A plaintiff bringing a hostile work environment claim must show that their employer discriminated against them on account of the plaintiff's membership in a protected group, and the "offensive conduct must be sufficiently severe or pervasive to alter the conditions of employment." *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978 (9th Cir. 2023) (citation omitted). "To determine whether an environment is sufficiently hostile or abusive to violate Tile VII, [courts] consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (citations omitted). "Simple teasing," "offhand comments," and "isolated incidents" are generally insufficient to constitute hostility. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that Title VII is not a "general civility code") (citation omitted).

Plaintiff claims that the following actions constituted a hostile work environment: (1) the March 16 incident, (2) an HR worker's statements to her, (3) her PIP, and (4) the compliance email. (Doc. 49 at 14.) The only action that could plausibly contribute to a hostile work environment claim is the March 16 incident. The HR member's statements to Plaintiff cannot be said to be hostile or uncivil here. The HR meeting allowed Plaintiff to share her perspective about the March 16 incident, and the HR workers even told Plaintiff they would follow up with witnesses who supported Plaintiff's version of events. (Doc. 49-1 at 19–21). As discussed above, the PIP and compliance email did not unreasonably interfere with Plaintiff's work performance and nothing in their contents could be said to be physically threatening or humiliating.

The March 16 incident, by itself, is insufficient to establish that Plaintiff suffered offensive conduct that was sufficiently severe or pervasive to alter the conditions of employment. Isolated incidents are actionable only if "extremely serious[.]" *Faragher*, 524 U.S. at 788. This incident does not rise to that level. While Plaintiff likely felt a subjective

level of humiliation from Dr. Mecham's comments calling her a liar and incompetent, no reasonable jury could conclude that the comments were "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment." *Sharp*, 69 F.4th at 978; *see McCree v. State of Cal. Dep't of Conservation*, No. 12-CV-04127-JST, 2014 WL 1936504, at *5 (N.D. Cal. May 14, 2014) (finding that an isolated incident where a plaintiff was called a liar and their performance was called into question did not establish a hostile work environment).

Thus, Plaintiff fails to show that she suffered offensive conduct sufficiently hostile to violate Title VII. Because Plaintiff has not demonstrated a genuine issue of fact, Defendants are entitled to summary judgment on the hostile work environment claim.

**C. Qualified Privilege to Speak.**

Plaintiff claims Dr. Mecham's statements to her on March 16, his email to Plaintiff's supervisor, and statements in her PIP were defamatory. (Doc. 49 at 6.) Defendants claim Plaintiff's defamation action should be dismissed because they had a qualified privilege to speak and did not abuse it. (*Id.* at 15.) Specifically, Defendants claim their statements "are conditionally protected by the common interest privilege[,]" and that Plaintiff presented "no evidence of either malice or excessive publication." (*Id.* at 16.) The Court agrees with Defendants.

A qualified privilege defends against a defamation action and is "based on the social utility norm of protecting statements required to be made in response to a legal, moral, or social duty." *Green Acres Tr. v. London*, 688 P.2d 617, 624 (Ariz. 1984). The immunity from this privilege is "conditioned upon publication in a reasonable manner and for a proper purpose." *Id.* (citation omitted). Without a "proper purpose or reasonable manner of publication, the defense fails." *Id.*

To determine whether a qualified privilege exists, courts analyze "whether a privileged occasion arose, and if so, whether the occasion for the privilege was abused." *Id.* "Whether a privileged occasion arose is a question of law for the court, and whether the occasion for the privilege was abused is a question of fact for the jury." *Id.*

### *1. Defendants Sufficiently Prove That a Privileged Occasion Arose.*

To show "that a privileged occasion arose, a defamation defendant must establish that the circumstances in which the communication was made created an obligation to speak." *Id.* Defendants claim their statements "are conditionally protected by the common interest privilege." (Doc. 49 at 16.) This privilege applies where "the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know." Restatement (Second) of Torts § 596 (1977).[7] This privilege exists between "[p]ersons associated together in professional activities." *Id.* § 596 cmt. d.

Arizona courts recognize that the common interest privilege applies where medical workers discuss a patient's care with each other and criticize a plaintiff's job performance. In *Hirsch v. Cooper*, a doctor made alleged defamatory statements in a conversation about another doctor's performance concerning a patient's care. 737 P.2d 1092, 1094 (Ariz. Ct. App. 1986). The court found that the common interest privilege applied because the discussion "concerned the future care of the patient and involved matters of a 'common interest' as well as 'information that affects a sufficiently important interest of the recipient or a third person.'" *Id.* at 1096.

Here, like the alleged defamatory statements in *Hirsch*, Defendants' statements arose in conversations between medical workers about a plaintiff's job performance in connection with the care of patients. First, Dr. Mecham's verbal statements to Plaintiff concerned the OCD-presenting patient's care and Plaintiff's job performance in relation to such care. *See* (doc. 49-1 at 9–10.) Second, Dr. Mecham's written statements to Plaintiff's supervisors concerned the care of the OCD-presenting patient, other patients who may have been improperly released, and the job performance of Plaintiff and others in the intake department. *See* (doc. 49-3; *see also* (doc. 49-5). Third, the PIP concerned Plaintiff's job performance in relation to patient care. *See* (doc. 49-6.) Each of the alleged defamatory statements arose on occasions where medical workers had a common interest in improving

---

[7]    "Arizona views the Restatement as authority for resolving questions concerning rules in defamation cases." *Burns v. Davis*, 993 P.2d 1119, 1126 ¶ 19 (Ariz. Ct. App. 1999).

patient care and correcting Plaintiff's job performance to improve such care.

Thus, Defendants' statements are conditionally protected by the common interest privilege.

### 2. Plaintiff Provides No Evidence that the Privilege was Abused.

Once a defendant shows that a conditional privilege may apply, the plaintiff can "prove an abuse of that privilege either by proving publication with 'actual malice' or by demonstrating excessive publication." *Green Acres*, 688 P.2d at 624 (citations omitted). An abuse through actual malice "occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth." *Id.* While this is normally a question for the jury, "the court can dispose of the issue" where there is no evidence of malice. *Aspell v. Am. Cont. Bridge League of Memphis, Tenn.*, 595 P.2d 191, 193 (Ariz. Ct. App. 1979).

"In a defamation case, if the factual dispute concerns actual malice, the trial court's summary judgment inquiry is whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Heuisler v. Phoenix Newspapers, Inc.*, 812 P.2d 1096, 1100 (Ariz. Ct. App. 1991) (citation omitted). "Proof of actual malice requires clear and convincing evidence that the defendants published either with knowledge that the defamatory statements were false or with reckless disregard for whether the statements were true or false." *Id.* "The evidence must be sufficient to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* (citations omitted).

Plaintiff does not directly address Defendants' qualified privilege claim in her response. *See* (doc. 51.) Instead, Plaintiff denies that she lacks evidence of intentional misrepresentation and denies that she lacks evidence regarding the conduct and knowledge of Copper Spring's HR administrators. (*Id.* at 10–11). Specifically, Plaintiff claims that her "clinical assessment was confirmed by her supervisor and witnessed by two coworkers." (*Id.* at 10.) However, Plaintiff does not explain how this is evidence showing that

Defendants knew their statements were false or that they recklessly disregarded whether their statements were true or false. Plaintiff also claims that Dr. Mecham could have accessed "objective clinical information supporting [her] conclusions[,]" and that Defendants had access to "system implementation dates, monitoring records, and compliance timelines." (*Id.* at 11.) Plaintiff does not point to anything in the record to support this claim, nor does she explain how this is evidence of actual malice. Thus, the Court finds Plaintiff's "mere denial" of the alleged defamatory statements is not evidence that Defendants abused their common interest privilege. *See Sewell v. Brookbank*, 581 P.2d 267, 271 (Ariz. Ct. App. 1978) (holding that a plaintiff's mere denial of alleged defamatory statements about his job performance was not evidence of actual malice).

Thus, Plaintiff failed to show that "the evidence in the record could support a reasonable jury finding … that the plaintiff has shown actual malice by clear and convincing evidence." *Heuisler*, 812 P.2d at 1100 (citation omitted). Because Plaintiff has not demonstrated a genuine issue of fact, Defendants are entitled to summary judgment on the defamation claims.[8]

//

///

//

///

//

///

//

///

//

---

[8]    As a final matter, Plaintiff, on June 25, 2026, filed a "Motion for Leave to File Exhibits Under Seal and Substitute Redacted Exhibits." (Doc. 56.) Although the public has a general right to inspect judicial records and documents, *see Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), given that the documents in question contain non-party medical records and personally identifiable medical information, the Court finds that the disclosure of such information "could result in improper use of the material for scandalous or libelous purposes[.]" *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). Accordingly, the Court shall grant the Motion and seal (docs. 30 & 39).

Accordingly,

**IT IS ORDERED** that Defendants' Motion Summary Judgment (Doc. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Partial Summary Judgment (doc. 48) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Exhibits Under Seal and Substitute Redacted Exhibits (doc. 56) is **GRANTED**. The Clerk of Court is kindly directed to file (doc. 30) and (doc. 39) **UNDER SEAL**.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and all scheduled hearings are vacated. The Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 14th day of July, 2026.

Honorable John Z. Boyle
United States Magistrate Judge